IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| CHRISTINE ANGELA PALERMO, ) | |
| ) | CASE NO. BK07-80099-TJM |
| Debtor(s). ) | A07-8036-TJM |
| NEBRASKA DEPARTMENT OF HEALTH & ) | |
| HUMAN SERVICES FINANCE & SUPPORT, ) | |
| ) | |
| Plaintiff, ) | CH. 7 |
| ) | |
| vs. ) | |
| ) | |
| CHRISTINE ANGELA PALERMO, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is before the court on the plaintiff's motion for summary judgment (Fil. #55) and objection by the debtor (Fil. #76). Wesley S. Dodge represents the debtor, and Jennifer Marie Tomka, Lynne R. Fritz, and Vicki L. Adams represent the State of Nebraska. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted in part and denied in part.

I. BACKGROUND

The debtor was a mental health counselor in the Omaha, Nebraska, area. She entered into an agreement with the Nebraska Department of Health & Human Services ("NDHHS") in 2002 to provide counseling to Medicaid patients. In 2005, the State began investigating allegations of billing fraud by the debtor and determined that the debtor had not performed all of the services for which she had billed Medicaid. Specifically, the State concluded the debtor had been paid $209,244 for false claims.

In January 2007, the debtor filed her Chapter 7 petition for relief. In March 2007, the debtor was charged with three counts of theft by unlawful taking for a portion of the overpayments. The debtor pleaded guilty in August 2007, and in November 2007 she was sentenced to a jail term and ordered to pay $3,237.22 in restitution, which has not been fully paid. The State filed this adversary proceeding alleging that, as a result of filing false claims, the debtor received overpayments which she had neither the intention nor the ability to repay. The State contends the debt resulting from the overpayments is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because it was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's financial condition.

The State requests a judgment of nondischargeability for the overpayments, plus additional damages under the Nebraska False Medicaid Claims Act, plus costs and attorneys' fees.[1]

## II. LEGAL STANDARDS

A.      11 U.S.C. § 523(a)(2)(A)

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). This embodies "a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." Cohen v. de la Cruz, 523 U.S. 213, 217 (1998) (internal citation omitted).

"Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another – something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." Merchants Nat'l Bank v. Moen (In re Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (quoting RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995)). "A 'false pretense' involves implied misrepresentation or conduct intended to create and foster a false impression." Moen at 791 (quoting In re Guy, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988)). "[W]hen the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression. This is the basis of the 'false pretenses' provision of Section 523(a)(2)(A)." Moen at 791 (quoting In re Malcolm, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)). False representations may be by omission or commission. Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1288 (8th Cir. 1987), abrogated on other grounds, Grogan v. Garner, 498 U.S. 279 (1991). A "misrepresentation" is "not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth." Moen at 791 (quoting LA Capitol Fed. Credit Union v. Melancon (In re Melancon), 223 B.R. 300, 308-09 (Bankr. M.D. La. 1998)). A debtor's silence regarding a material fact may constitute a false representation actionable under § 523(a)(2)(A). Moen at 791.

To establish fraud within the context of § 523(a)(2)(A), a creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. Universal Bank, N.A. v. Grause (In re

---

[1] It is unclear exactly how much the State is owed for the overpayments. The amended complaint requests $209,244, while the motion for summary judgment requests $178,356.29, which is the amount the State estimated its actual damages to be as of the bankruptcy petition date. With the civil penalties and double and treble damages authorized by the False Medicaid Claims Act, Neb. Rev. Stat. § 68-936, the State is seeking damages of $9.8 million from the debtor.

Grause), 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing Thul v. Ophaug (In re Ophaug), 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by Field v. Mans, 516 U.S. 59 (1995)); Blue Skies, Inc. v. Preece (In re Preece), 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007). In Field v. Mans, the Supreme Court held that § 523(a)(2)(A) requires justifiable reliance, in which "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. at 71 (citing the Restatement (Second) of Torts § 545A cmt. b (1976)). Justifiable reliance is a minimal standard and does not require the creditor to conduct an investigation, even if the failure to investigate would be considered negligent and the falsity of the representation would be readily discoverable upon an investigation. Field v. Mans, 516 U.S. at 70-71.

To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. Lindau v. Nelson (In re Nelson), 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). When assessing the debtor's knowledge that the representation was false, the court must consider the debtor's knowledge and experience. Moen, 238 B.R. at 791 (citing Federal Trade Comm'n v. Duggan (In re Duggan), 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). The knowledge requirement can be satisfied with a finding that the debtor recklessly disregarded the truth by making the false representation under circumstances where she should have known it to be false. Id.

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." Moen at 791 (quoting Moodie-Yannotti v. Swan (In re Swan), 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." Id. (quoting Van Horne, 823 F.2d at 1287). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. Id. (quoting Duggan, 169 B.R. at 324). The key is whether the debtor knew the statement to be false at the time she made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." Nelson, 357 B.R. at 513.

    B.    Summary judgment

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from

the record, without resorting to speculation. Hitt v. Harsco Corp., 356 F.3d 920, 923-34 (8th Cir. 2004).

### III. DISCUSSION

The State is requesting a finding that the debt stemming from the debtor's allegedly fraudulent Medicaid claims are nondischargeable. Included in those claims is a subset of fraudulent claims for which she was criminally prosecuted and sentenced to incarceration and the payment of restitution. With regard to the judgment in the criminal case, the debtor concedes that she is collaterally estopped from challenging the nondischargeability of the restitution debt. With regard to the more than 2,000 other claims at issue, the debtor denies that all of them are fraudulent or that she had the requisite intent to deceive.

    A.     Collateral estoppel effect of state court judgment

A state court action to establish a debt is separate from a determination of the dischargeability of that debt in bankruptcy. Tatge v. Tatge (In re Tatge), 212 B.R. 604, 609 (B.A.P. 8th Cir. 1997). The bankruptcy court has exclusive jurisdiction to determine whether debts for a debtor's fiduciary or non-fiduciary fraud, embezzlement, larceny, or willful and malicious injury are non-dischargeable. 11 U.S.C. § 523(c); Zio Johnos, Inc. v. Ziadeh (In re Ziadeh), 276 B.R. 614, 619 (Bankr. N.D. Iowa 2002). Therefore, the court must review the state court judgment to see whether it establishes the elements of a prima facie case under § 523. Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989-90 (8th Cir. 1999).

When the parties have previously litigated an issue in a state court, the bankruptcy court will look to state law to determine the preclusive effect of that judgment. Madsen, 195 F.3d at 989-90; Jacobus v. Binns (In re Binns), 328 B.R. 126, 129 (B.A.P. 8th Cir. 2005). In Nebraska, res judicata bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. Ichtertz v. Orthopaedic Specialists of Nebraska, P.C., 730 N.W.2d 798, 804 (Neb. 2007).

Here, the debtor was charged in the District Court of Douglas County, Nebraska, with three counts of unlawful taking by billing the State and receiving payment for Medicaid services she did not provide. The counts are as follows:

COUNT 1
THEFT BY UNLAWFUL TAKING, in violation of Neb. Rev. Stat. §28-511(1) in that she did, between February 24, 2004 and June 20, 2006, unlawfully, knowingly or intentionally take, or exercise control over property belonging to Nebraska Medical Assistance Program with the intent to deprive it thereof, to wit: money, as a result of claims submitted to Medicaid valued at over $1,500.00 ($3,103.22), and as to

COUNT 2

THEFT BY UNLAWFUL TAKING, in violation of Neb. Rev. Stat. §28-511(1) in that she did, between June 1, 2006 and August 15, 2006, unlawfully, knowingly or intentionally take, or exercise control over property belonging to Nebraska Medical Assistance Program with the intent to deprive it thereof, to wit: money, as a result of claims submitted to Medicaid valued at $500.00 or more, but not over $1500.00 ($883.47), and as to

COUNT 3

THEFT BY UNLAWFUL TAKING in violation of Neb. Rev. Stat. §28-511(1) in that she did, between June 6, 2006 and June 22, 2006, unlawfully, knowingly or intentionally take, or exercise control over property belonging to Nebraska Medical Assistance Program with the intent to deprive it thereof, to wit: money, as a result of claims submitted to Medicaid valued at more than $200.00 but less than $500.00 ($350.58)[.]

Affid. of D. Mark Collins (Fil. #65).

Section 28-511(1) of the Nebraska Revised Statutes provides: A person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof. That subsection "proscribes or condemns only that conduct in which criminal intent is present, distinguishing theft from activity which is otherwise permissible as noncriminal conduct." State v. Copple, 401 N.W.2d 141, 150 (Neb. 1987).

The debtor pleaded guilty to the offense of theft by unlawful taking, a Class IV felony, and was sentenced to a jail term of 90 days followed by probation, and ordered to pay restitution of $3,237.27. Any condition a state criminal court imposes as part of a criminal sentence, including restitution, is excepted from discharge under § 523(a)(7). Kelly v. Robinson, 479 U.S. 36, 50 (1986). In connection with the guilty plea, the debtor admitted she lied by submitting falsified claims or claims for which she had no supporting documentation. This is a representation which she knew to be false but made with the intent to deceive the payor in order to receive Medicaid payments to which she was not entitled. Therefore, the elements of the debtor's criminal conviction clearly meet the requirements of § 523(a)(2)(A), and this portion of the debt is nondischargeable.

B.    Charges for which no criminal proceeding was instituted

The State alleges that its investigation revealed the debtor submitted more than $200,000 in false claims. It has included the results of its investigation and audit in the evidence in support of its motion; in opposition, the debtor submitted the deposition of one of the State's investigators. According to the State, more than 85 percent of the claims the debtor submitted between July 2003 and June 2005 were unsubstantiated. There are numerous claims for which the debtor could provide no documentation, several claims for services the debtor could not have rendered (and which she admits she did not render), and 30 instances where the debtor billed the State for providing at least 11 hours, and sometimes more than 16 hours, of services in a single day.

The debtor argues that her billing and record-keeping problems caused many of the issues about which the State complains. She told the investigators that failures of the various electronic systems she used for patient notes and records caused the loss of data and left her unable to provide supporting documentation for each claim. She said her failure to familiarize herself with the proper claim codes for various types of services resulted in inaccuracies in her claims as filed. She also attests in an affidavit that the person authorized to prepare her billings and her NDHHS claims sometimes manipulated the dates of service to make them fit within certain authorization periods, which is why NDHHS records give the impression that the debtor worked some very long days.

In addition, the debtor questions the credibility of certain witnesses interviewed by the State in the investigation, and she objects to the State's attempt to use evidence of prior fraudulent acts to show her propensity to have committed the fraud alleged here. She also challenges the State's chain of custody of the records at issue. However, the State has rebutted the custody issue with an affidavit from the evidence custodian for these files. The other evidentiary issues will be addressed at trial, or, in the case of the Rule 404(b) evidence, prior to trial if the debtor files a motion in limine.

A review of the evidence in light of the factors the State must establish to render the debt nondischargeable indicates that some, but not all, of the statutory elements are proven. The Medicaid claims were written representations that the debtor had provided the services for which she sought compensation, so the first element of the § 523(a)(2)(A) test is met. There is no doubt that at least some of the claims submitted by the debtor, aside from the ones she has already admitted were fraudulent, are false.

The State caused the claims to be paid until it was notified by a third party that the debtor was submitting possibly fraudulent claims. The Nebraska regulations regarding Medicaid providers require that all claims be "true, accurate, and complete." 471 Neb. Admin. Code ch. 2, § 001.03(6) (2005). It is clear from the affidavits provided to the court that the State does not routinely check Medicaid claims unless it becomes aware of a suspicious claim. It relies on the purported accuracy and honesty of the submission until it has reason not to. In this instance, the State paid the debtor's claims for more than two years before being alerted to possible fraud. Because the investigative process involved interviews with the debtor, her billing manager, and other individuals with knowledge of the situation, and several opportunities for the debtor to provide records to the investigators, the State was unaware of the breadth of the alleged deception until November 2005. Throughout the time period covered by the investigation, July 2003 to June 2005, the debtor submitted more than 100, and sometimes in excess of 200, claims per month. Given the scope of the State's Medicaid program and the presumed volume of claims submitted by all providers, the State's reliance on the veracity of each claim is justifiable. Therefore, the State justifiably relied on the claims as submitted and suffered a financial loss by paying them, thereby meeting the fourth and fifth elements of the § 523(a)(2)(A) test.

The unresolved issues are whether the debtor knew the information in the claims was false when she submitted them and whether she deliberately made the representations with the intention of deceiving the State. The lack of an administrative determination regarding the claims distinguishes this case from cases such as New York v. Khouri (In re Khouri), 397 B.R. 111 (Bankr. D. Minn. 2008), and Connecticut Dept. of Soc. Servs. v. Hultman (In re Hultman), 263 B.R. 402

(Bankr. D. Conn. 2001), in which the bankruptcy courts, in the context of § 523(a)(2)(A), had to evaluate the collateral estoppel effect of administrative or state court judgments finding that the debtors had knowingly made false or unsupported representations in requests for payment from the state government. In contrast, the only existing order in this case is from the criminal proceeding on three counts of theft by unlawful taking, and the nondischargeability of that debt is not in dispute. As noted in the preceding paragraph, the State is challenging the veracity of thousands of the debtor's claims, so a trial will be necessary in order to make factual findings on the debtor's knowledge and intent as to each of the claims.

## IV. DAMAGES

The State is seeking compensatory damages of $178,356.29 for payments it made to the debtor based on her fraudulent claims. This represents the net payment of $99,868.41 for 715 false claims submitted prior to July 16, 2004, and the net payment of $78,487.88 for 584 false claims submitted on or after July 16, 2004. The relevance of that date is the amendment of the Nebraska False Medicaid Claims Act, Neb. Rev. Stat. §§ 68-934 to -47, under which damages may be multiplied. Prior to July 16, 2004, any person submitting a false Medicaid claim was subject to a civil penalty of not more than $5,000 for each false claim, plus twice the damages sustained by the State because of such claim. Neb. Rev. Stat. § 68-1037.03 (2003). As of July 16, 2004, a person submitting a false claim became subject to a civil penalty of $10,000, plus three times the amount of the false claim submitted. Neb. Rev. Stat. § 68-1075(2) (2004); Neb. Rev. Stat. § 68-936 (Supp. 2006). The State also requests actual damages of $3,159.43 for the 40 false claims that were the subject of the criminal proceeding, plus penalties as stated above. However, the restitution order establishes the amount due for those claims and that amount is nondischargeable.

Under the Nebraska False Medicaid Claims Act, a person presents a false Medicaid claim and is subject to civil liability if such person:

> (a) Knowingly presents, or causes to be presented, to an officer or employee of the state, a false or fraudulent claim for payment or approval; [or]
> (b) Knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval by the state of a false or fraudulent claim[.]

Neb. Rev. Stat. § 68-936(1).

If the evidence at trial establishes that the debtor knowingly presented or caused to be presented false claims to the State for payment, with the intention of deceiving the State, she will be subject to liability for damages under that Act. When evaluating the amount of damages to be awarded and penalties to be imposed, the court is to consider the following:

> (1) In determining the amount of any penalties or damages awarded under the False Medicaid Claims Act, the following shall be taken into account:
> (a) The nature of claims and the circumstances under which they were presented;
> (b) The degree of culpability and history of prior offenses of the person

presenting the claims;
  (c) Coordination of the total penalties and damages arising from the same claims, goods, or services, whether based on state or federal statute; and
  (d) Such other matters as justice requires.
(2) (a) Any person who presents a false medicaid claim is subject to civil liability as provided in section 68-936, except when the court finds that:
  (i) The person committing the violation of the False Medicaid Claims Act furnished officials of the state responsible for investigating violations of the act with all information known to such person about the violation within thirty days after the date on which the defendant first obtained the information;
  (ii) Such person fully cooperated with any state investigation of such violation; and
  (iii) At the time such person furnished the state with the information about the violation, no criminal prosecution, civil action, or administrative action had commenced under the act with respect to such violation and the person did not have actual knowledge of the existence of an investigation into such violation.

Neb. Rev. Stat. § 68-940.

Moreover, the nondischargeability of a debt under § 523(a)(2)(A) "encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." Cohen v. de la Cruz, 523 U.S. 213, 223 (1998); Quadrangle Enter., Inc. v. Harper (In re Harper), 378 B.R. 836, 853 (Bankr. E.D. Ark. 2007). If the State prevails in a False Medicaid Claims Act case, it is entitled to recover its costs and attorneys' fees from the debtor, § 68-936(3), and they would be nondischargeable as well.

 IT IS ORDERED:

 1. The plaintiff's motion for summary judgment (Fil. #55) is granted as to the restitution debt ordered by the District Court of Douglas County, Nebraska. That debt is not discharged. It will be made part of the judgment entered at the conclusion of this case.

 2. The plaintiff's motion for summary judgment (Fil. #55) is denied in all other respects.

 3. The clerk shall direct the parties to prepare and file a joint preliminary pretrial order.

 DATED: March 20, 2009

             BY THE COURT:

             Timothy J. Mahoney
             United States Bankruptcy Judge

Notice given by the Court to:
    Wesley S. Dodge
    *Jennifer Marie Tomka
    *Lynne R. Fritz
    *Vicki L. Adams
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.