IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-80099-TJM |
| | ) | |
| CHRISTINE ANGELA PALERMO, | ) | CH. 7 |
| | ) | |
| Debtor. | ) | |
| NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES FINANCE AND SUPPORT, | ) ) ) | ADV. NO. A07-8036-TJM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHRISTINE ANGELA PALERMO, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Trial was held in Omaha, Nebraska, on November 12 and 13, 2009, on the plaintiff's amended complaint (Fil. #34). Vicki L. Adams appeared on behalf of the plaintiff, and Wesley S. Dodge appeared on behalf of the debtor-defendant. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

### Findings of Fact and Discussion

The defendant was a state-licensed mental health therapist who provided therapy services to Nebraska Medicaid patients and billed the Nebraska Medicaid program for the services. She was authorized under Medicaid regulations to provide the services in her office, in a nursing home, and in certain other locations, but was not authorized to provide the services to patients while they were hospitalized. Even though not so authorized, the defendant was paid $3,159.43 for 30 claims for services allegedly provided to patients while they were hospitalized.

The plaintiff started an investigation of the services billed for by the defendant because the manager of one of the nursing homes at which the defendant provided services to her patients notified the plaintiff that the defendant was sometimes billing for services provided to a patient or a patient's family, although, instead of meeting with the patient or the patient's family, she was simply visiting with staff at the home.

The plaintiff, after having one of its employees begin a review of the defendant's billings, referred the matter to fraud investigators in the office of the Nebraska Attorney General. Those investigators requested information from the defendant and reviewed the defendant's files. They

found that a significant number of files contained no documentation or substantiation that services were provided. They also found that the defendant had claimed more services were provided than would be possible in a day, on several occasions. Finally, they determined that the defendant had claimed services had been provided in the office or at the home of a patient on days while the patient was actually hospitalized.

The investigators concluded that only 15% of the claims and the patient files they reviewed had documentation. The investigators testified that billings of at least $177,000.00 out of a total of $211,000.00 appeared to be bogus in that the files showed no program notes or other documentation.

The defendant's record of at least one appointment with a particular patient, T.L., shows that the patient did not appear, but the defendant billed for the services anyway.

The person who prepared the Medicaid billings for the defendant, based upon forms completed by the defendant, testified that she informed the defendant on several occasions that some services were being provided after the expiration of the defendant's authorization to provide such services. At the request of the defendant, the billing person changed the dates of service to fit the authorized period. Doing so caused some days to show services provided from 12 to 19 hours.

On at least one occasion, the defendant billed for services provided in North Platte, Nebraska, on the same day that she showed services provided in Omaha, Nebraska. Defendant admits that she did not provide any services in North Platte, Nebraska.

The defendant admits that she was negligent in the manner that she kept her files. She cannot explain why 85% of her files have no documentation for the claimed services. She testified that she did provide almost all of the services billed for, but admits that a few were billed incorrectly. In addition, she claims she had no idea that she was not authorized to provide services at hospitals, even though the Medicaid regulations and her agreement with the plaintiff make it clear that she is not so authorized. She claims that she did provide the services at the hospitals.

At the end of the investigation, she was charged in the District Court of Douglas County, Nebraska, with the crime of Medicaid fraud. She pled guilty, spent some time in jail, and has made some of the restitution payments that were ordered by the court. She argues that some of the erroneous billings which were included in the restitution order are probably also included in the allegations contained in the adversary complaint and that any judgment rendered in this litigation should not be duplicative of those reimbursement claims covered by the restitution order.

The defendant testified that she did not intend to defraud Medicaid and that any billing errors occurred because of her ignorance of the rules or through unauthorized activities by her billing clerk.

After her time in jail, the defendant unsuccessfully attempted to negotiate a settlement with the plaintiff. Unable to do so, she filed this Chapter 7 case. The plaintiff then filed this nondischargeability action alleging that the Medicaid program had paid her thousands of dollars

resulting from her false representations and actual fraud. The complaint also included a claim for fraud as a fiduciary, but that claim was not pursued.

I find as a fact that the defendant did intentionally submit erroneous charges to be paid by the Medicaid program and that officials at the Medicaid program justifiably relied on her representations contained in her billing records as being true. The record is replete with examples of a variety of erroneous acts, including billing for services that were not provided, billing for services at hospitals when she had no hospital privileges, submitting false statements to Medicaid with regard to dates, times, and locations of services provided, as well the types of services provided to either patients or the families of patients. The defendant had a license to provide mental health therapy services, she had an agreement with the Medicaid program which outlined the services she could provide, she had a manual that explained the billing procedures, and she had a billing clerk who informed her on more than one occasion that she was not properly billing Medicaid. Eighty-five percent of her files showed no supporting documentation for the services allegedly provided and charged to Medicaid.

Her excuses, acknowledging that she was negligent in the manner in which she kept her files, claiming that she had no idea about the regulations concerning billing, blaming her billing clerk for all mistakes, and denying that the billing clerk had ever warned her about the problem, are simply unbelievable.

## Conclusions of Law

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). This embodies "a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." Cohen v. de la Cruz, 523 U.S. 213, 217 (1998) (internal citation omitted).

To establish fraud within the context of § 523(a)(2)(A), a creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. Universal Bank, N.A. v. Grause (In re Grause), 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing Thul v. Ophaug (In re Ophaug), 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by Field v. Mans, 516 U.S. 59 (1995)); Blue Skies, Inc. v. Preece (In re Preece), 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007).

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." Merchants Nat'l Bank v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting Moodie-Yannotti v. Swan (In re Swan), 156 B.R. 618, 623 n.6

(Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." Id. (quoting Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1287 (8th Cir. 1987)). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. Id. (quoting Federal Trade Comm'n v. Duggan (In re Duggan), 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)).

The evidence establishes that the defendant knowingly and intentionally submitted or caused to be submitted false claims for payment from the plaintiff. The false and fraudulent nature of her claims for payment excepts her debt to the plaintiff from the discharge she received. The amount of that debt is addressed below.

Damages

Nebraska's False Medicaid Claims Act provides that a person presenting a false claim for payment is subject to a civil penalty per claim of up to five thousand dollars or up to ten thousand dollars (depending on the submission date of the claim), as well as double or treble damages (again depending on the submission date of the claim) and payment of the plaintiff's costs and attorneys' fees. Neb. Rev. Stat. Ann. § 68-936 (LexisNexis 2009); Neb. Rev. Stat. Ann. § 68-1037.03 (LexisNexis 2003).

After a motion for summary judgment was denied, the plaintiff, in trying the case, limited the allegations of submitting false claims to those shown on filings 109, 112, and 114. The plaintiff has requested double damages of $3,510.68 for the 11 claims submitted on or before July 16, 2004, and treble damages of $4,779.60 for the 19 claims submitted after July 16, 2004. In addition, for each of the 30 claims, the plaintiff is seeking $1,000.00. Combined, the damages that plaintiff is seeking amount to $38,290.28. The doubling of the actual damages and the addition of $1,000.00 for each of the 30 claims is supported by testimony of employees of the state concerning the investigative costs incurred based upon a percentage of the salary of each of the employees involved in the investigation. A judgment of nondischargeability in that amount will be entered, plus an amount to compensate the plaintiff for attorneys' fees and costs incurred.

The debtor's argument that the plaintiff's claims here may duplicate some of what she previously was ordered to pay in restitution in her criminal case has been considered, but it lacks merit. The statutory civil penalties and damages are separate and distinct from the criminal penalties that were imposed. See, e.g., United States v. Peters, 927 F. Supp. 363, 368-69 (D. Neb. 1996) (civil penalties are remedial and are intended to allow the government to recoup the costs of its investigation and prosecution).

The plaintiff is granted the opportunity to submit an itemization of the attorneys' fees incurred. The defendant may thereafter file whatever objection she has to the award of any or all of the attorney's fees. One single final judgment, both of nondischargeability and a monetary judgment, will then be entered.

IT IS ORDERED: The plaintiff shall submit an itemized statement of attorneys' fees and costs on or before March 8, 2010. The defendant may file an objection on or before March 23, 2010. A single judgment, awarding monetary damages to the plaintiff and excepting the debt from discharge, will then be entered.

DATED:    February 4, 2010

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
 *Vicki L. Adams
 Wesley S. Dodge
 Thomas D. Stalnaker
 United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.